## TAYLOR v. AMERICAN FREEHOLD LAND MORTGAGE COMPANY OF LONDON LIMITED.

1. Where a husband made to his wife a conveyance of land upon which he had previously executed a mortgage to a third person, and the wife, being thus clothed with the title, borrowed money and gave her promissory note for the same, intending to use a portion thereof in paying off the encumbrance, which was in fact done, she could not, although the intention to pay off the encumbrance was known to the lender at the time the loan was made, defeat a recovery by the lender upon the note, either in whole or in part, upon the ground that it was given for her husband's debt or for money with which to pay the same.

2. Under the facts disclosed in the present record, the note which is the foundation of the plaintiff's suit is a Georgia contract, and as such will be upheld as not violative of the usury laws of this State, there being no evidence tending to show bad faith or any device or contrivance to evade the usury laws of the State of New York.

3. There was no error in the rulings on the admissibility of evidence. The evidence demanded a finding in favor of the plaintiff, and the court did not err in directing the jury to return a verdict in its favor.

Argued November 14, — Decided December 17, 1898.

Assumpsit. Before Judge Spence. Lee superior court. January 14, 1898.

Mrs. Taylor executed a promissory note dated January 25, 1884, and due December 1, 1888, payable at the office of the Corbin Banking Company in New York City, to the order of J. K. O. Sherwood, for $6,000 principal, with interest at eight

per cent. per annum from date, payable annually, as per five interest notes thereto attached, and interest on both the principal sum and the interest notes from maturity at the same rate. The principal note also provided for the payment of all cost of collection, including ten per cent. on principal and interest, as attorney's fees.  She executed, as security for the debt, a deed of the same date, conveying certain land to Sherwood, the deed reciting that it was made to secure a loan of $6,000 by the grantee to the grantor, under the conditions of a certain bond for reconveyance, and that the deed and the bond were executed "to conform to sections 1969, 1970, and 1971 of the Code of Georgia."  A deed of the same date, conveying the same land to the American Freehold Land Mortgage Company of London Limited, subject to the right of Mrs. Taylor to a reconveyance of the same under the terms and conditions set out in the bond of Sherwood to her, was executed by Sherwood; and the notes were indorsed by him to that company.  The principal and the interest from November 15, 1886, were not paid, and the mortgage company sued Mrs. Taylor for the same, and for ten per cent. thereon as attorney's fees.

The defendant pleaded: (a) The notes and the mortgage were without consideration and void, because executed by the defendant to the payee, Sherwood, who was then acting as the agent of the Corbin Banking Company, upon his promise and undertaking that on these securities and on account of these obligations the Corbin Banking Company would lend and pay to the defendant $4,700 in money, which they failed to do; on the contrary, Sherwood, the Corbin Banking Company, or the plaintiff (all of whom acted in concert in this transaction, and were parties thereto, directly or indirectly) paid $4,700 to one George Thomas, and took from him a transfer of a judgment and execution from the superior court of Sumter county in favor of Thomas against Eleazar Taylor, defendant's husband, on which there was apparently due that sum, and which was wholly a debt of her husband, and not of herself, she having no liability for the same, nor any pecuniary interest therein, and the plaintiff now holds and controls the judgment and the execution.  (b) The notes were given upon a usurious con-

sideration, and except as to the sum of $4,700, and legal interest thereon, are void; for the defendant, at the instance and for the benefit of her husband solely, applied to the Corbin Banking Company, through its agent Sherwood, for a loan of money to pay off the debts of her husband, and executed the notes described in the declaration, and executed a mortgage on her individual property to secure the same; and only $4,700 was loaned on the same, there being thus reserved and taken for interest $1,300, besides ten per cent. additional as attorney's fees, from January 25, 1884, to December 1, 1884, and eight per cent. per annum on the face of the note, from the date thereof. (c) Sherwood, the Corbin Banking Company, and the plaintiff were all parties to the transaction, which was for the benefit of the plaintiff, and was a scheme to evade the law as to usury. (d) The notes and the papers to secure the same were made out in the State of New York, and were made payable in that State; and it was the intention of the parties that the contract, in so far as the payment of the principal and interest was concerned, should be governed by the laws of that State. Under the laws of New York at the time of the execution of the contract, a note bearing interest at a greater rate than six per cent. per annum was void. The taking of the deed to secure the note in the language and terms thereof, was an effort to evade the usury laws of New York. (e) The notes were given under the influence and at the urgent solicitation of defendant's husband, and against her will, and to pay the debt due by him to George W. Thomas; and it was known to all parties that the negotiations for the loan were for the purpose of paying her husband's debts. She did not receive any part of the money, but the Corbin Banking Company reserved $900 out of the principal, and the remainder was turned over to George W. Thomas in payment of judgments and notes which he held against her husband. This contract was illegal and void under the laws of Georgia. (f) The consideration of the notes has failed in this: that they were given under the promise that $6,000 in cash was to be paid to defendant; and after the negotiations were made, the plaintiff, through its agents, presented to her a receipt to sign for the $6,000, and she was induced to

sign it by the false and fraudulent promises and representations of the plaintiff and its attorneys that upon signing it she would receive the money as indicated in the receipt; but she has never received any money or other property from plaintiff, its agents or attorneys, for the notes. Whatever money, if any, was realized from the notes was appropriated to the payment of her husband's debt to Thomas, evidenced by judgments against him; and the judgments have never been turned over to her, and she is informed they were taken possession of by the plaintiff, and the plaintiff claims that they were transferred to it. She has never consented that the money should be so applied, or that the notes should be devoted to such use, and the same, if done, was done without her knowledge or consent. (g) The verdict and judgment in favor of George W. Thomas against Eleazar Taylor as defendant, and Clara E. Taylor as claimant, finding the property subject, were a fraudulent transaction to make defendant assume the debts of her husband. Her husband was able to pay his own debts, and his credit was good at the time the loan was made. It was a violation of the law of Georgia for her to mortgage or deed her separate estate as security to pay her husband's debts, and the plaintiff knew this when the security was taken to pay her husband's debts; and if part of the contract was illegal, all was illegal. The verdict finding the property subject, as above mentioned, being secured by fraud, has never been paid, and is barred by the statute of limitations. Plaintiff and the Corbin Banking Company have never been chartered or organized in the State of Georgia, and claim to have no agents in this State to loan money, and they could not have a Georgia contract and thereby evade the usury laws of New York, where the contract was made. The Corbin Banking Company reserved $900 of the principal sum of $6,000 in New York, and since that time has been charging defendant usury on the $900 at eight per cent in New York, and when defendant paid this usury in New York it made the whole debt void. The amounts which the coupon notes call for were accumulated in New York at eight per cent., a usurious rate of interest, and were paid in New York at that rate, and were made void. (h) The defendant agreed to pay

the broker, John B. Felder, his commission, twenty per cent. on the amount of the loan, to procure the loan on mortgage security, and the Corbin Banking Company received $900 of this twenty per cent. The plaintiff, or the person through whom the loan was obtained, knew of the agreement, and the mortgage is tainted with usury, though they may not have received any part of the commissions. (*i*) Plaintiff and the Corbin Banking Company were one and the same person; the Corbin Banking Company was really the agent and representative of the plaintiff, the commissions reserved were taken by the plaintiff, and the contract purporting to make the Corbin Banking Company the agent of the defendant was a scheme to evade the usury laws of both the State of New York and the State of Georgia; and the payment of $1,200 commissions was a reservation by plaintiff of that sum; and as interest was charged against defendant on the entire sum, the rate charged was usurious, and the note was void under the laws of New York, the contract being a New York contract. (*j*) The charge of ten per cent. as attorney's fees, sued for, is usurious, because plaintiff does not allow ten per cent. as attorney's fees, but contracts for a less sum, and yet demands the same with interest thereon from defendant. The collection of said ten per cent. for other purposes than as attorney's fees is without consideration, and in effect usurious.

The court directed a verdict in favor of the plaintiff for $6,-000 principal, $6,718.93 interest to November 6, 1897, $1,271-.89 attorney's fees, and costs. Defendant's motion for a new trial was overruled, and she excepted. The motion alleged, in addition to the general grounds, that the court erred. (*a*) In not allowing defendant's counsel to prove by E. Taylor, that his wife, the defendant, was not present at Lee court, March 13, 1883, when the verdict and judgment were rendered finding against her claim, which had been filed and was pending in Lee superior court, to the lands embraced in the case at bar; that she did not know and had not heard that said verdict and judgment had been taken on said claim until since the pendency of this suit against her; and that there was no trial on the claim on which a verdict could be found subjecting the prop-

erty, and any consent of witness or attorneys in said case to such verdict and judgment was without the knowledge, consent, authority, or acquiescence of defendant. It is contended that this evidence was relevant and material, because it was sought to conclude the defendant by such verdict and judgment, by showing that the property had been adjudicated as that of her husband and subject to the debt of G. W. Thomas levied thereon, when in fact she was ignorant of this, and therefore never recognized the claim of Thomas until, on the importunities of her husband, she borrowed the money to pay his execution to Thomas; that is, if she was to be held bound about the Thomas debt, it should be on her voluntary assumption of the same, and not that she should be held concluded by such verdict and judgment, of which she was ignorant, never having had her day in court and not having heard of the same in time to have the same set aside for the purposes of the case at bar. (b) In not allowing defendant's counsel to prove by E. Taylor, that at the time he gave Thomas the mortgage on the lands in Lee county, embraced in this suit and covered by the mortgage fi. fa. introduced in evidence by the plaintiff, he stated to Thomas before giving the mortgage that the Lee county lands belonged to his wife and not to himself, that his wife's money had paid for the lands, and that witness simply held paper title to the same; and Thomas remarked: "All right, he would risk it anyhow, as he already had a mortgage on the house and lot in Americus, which was good security for all the debt except the interest." It is contended that this proof was pertinent, because the plaintiff, having taken to itself a transfer, as additional security to the deed made to it by the defendant, of the Thomas mortgage fi. fa., took the same with all the notice that Thomas had, and therefore plaintiff had notice that the Thomas mortgage was invalid. (c) In not submitting to the jury the question of consideration in the transaction, it being the defendant's contention that the plaintiff paid nothing to her nor for her benefit as a consideration for the papers sued on; that the plaintiff instead invested the money in certain judgments against her husband; and that if the judgments were ever a lien on the lands, they are barred by the statute of limitations, and her

land is discharged from the same, as well as the deed made by her to Sherwood.

The motion further alleges, that there was undisputed evidence of usury in the contract sued on, it appearing from the testimony of E. Taylor and that of J. B. Felder, the only witness for plaintiff, that the money which was received at Americus on these papers consisted in a check of the Corbin Banking Company for about $4,700, and that this was all that was received as a consideration for said papers, except the commissions of $1,200 which were reserved, and $900 of which was charged as premiums by the Corbin Banking Company in the name of commissions, and $110 fire-insurance premium paid by J. B. Felder, it nowhere appearing in the evidence that the Corbin Banking Company received the money it sent to Americus from J. K. O. Sherwood, or the plaintiff, or from any one else, as the consideration of any loan made by any one else on these papers, or as the purchase-price from any one else for the same. Therefore the Corbin Banking Company sent its check for $4,700 as a part of the consideration of the loan, and having charged $1,200 commissions for the loan, $900 of which was for its own benefit and $300 of which was paid to its agent, J. B. Felder, it is insisted that this transaction, under the evidence, is clearly usurious; and that instead of directing a verdict, the court should have submitted to the jury whether, under the facts, there was usury in the transaction. Also, the court erred in not submitting to the jury the question as to whether the contract sued on was a New York or a Georgia contract, there being evidence from which they could and should have inferred that it was the intention of the parties to make the transaction a New York contract, especially so in the light of the printed instructions sent to defendant by plaintiff's agent, who, notwithstanding it claimed to be only a broker or intermediary, still held for collection all of defendant's papers, making strict requirements of her with reference to the payment of the same at its office in New York and nowhere else, and pointing out the penalties for failure to do so. And that the court erred in not submitting to the jury the issue of usury in the contract, for the further reason that there was evidence from which

the jury could and should have found that the Corbin Banking Company, while it claimed to be only a broker or intermediary, was really the agent of the plaintiff, because while the Corbin Banking Company reserved $900, called commissions, for itself, and $300 for J. B. Felder, its agent, which was claimed to be a simple commission for making the loan, still the papers were payable at and collectable through the Corbin Banking Company's office only, in which matters the Corbin Banking Company was unquestionably the agent of the plaintiff, sending out circulars of instructions calling attention to the fact that the money due on the loan and interest coupons could be paid only at the Corbin Banking Company's office, and that payments elsewhere or to any one else would not be recognized; and it is contended, that the fact of the agency being established for one purpose, it will be presumed to exist and continue through the entire transaction, and that therefore the commissions received by the Corbin Banking Company or its agents for making this loan made the transaction usurious.

*Allen Fort, J. W. Walters, James Taylor* and *Estes & Jones*, for plaintiff in error.

*W. E. Simmons* and *Anderson, Felder & Davis*, contra.

COBB, J. 1. It appears from the evidence that E. Taylor owned certain lands, that he gave a mortgage on the same to Thomas, and that after the execution of this mortgage Taylor conveyed the lands to his wife. All of the money borrowed by Mrs. Taylor and which was the consideration of the note sued on, except what was used to pay for commissions and insurance, was applied to the payment of the Thomas mortgage. Mrs. Taylor claims in her plea that this was such an assumption of the debt of her husband as to render her promise void. That such a transaction is valid and binding upon the wife was held in the case of *Daniel* v. *Royce*, 96 *Ga.* 566. In that case Justice Lumpkin says: "A note given by a married woman, the consideration of which, pure and simple, is a debt due by her husband, is certainly void. But it by no means follows that she may not bind herself by a note given by her for a loan of money with which to pay off an encumbrance on her own prop-

erty, although this encumbrance may have been created by the husband himself before she became the owner.    In such a case, it makes no difference at all that the lender knew the purpose for which the money was borrowed.    The policy of the law is to forbid the wife from making herself in any manner liable for the husband's debt as such; but there is no good reason why a wife, when she becomes the owner of property formerly belonging to the husband, may not use her own means, or borrow money, for the purpose of relieving the property of a lien of the existence of which she fully knew when she accepted the husband's conveyance.    In such a case, she does not discharge the lien because it represents the husband's debt, and the consideration which moves her is not a purpose to relieve him from the indebtedness, but to free her own property from an existing encumbrance."    See also *Strickland* v. *Gray*, 98 *Ga.* 667.

2. Mrs. Taylor was a resident of Georgia, and the note sued on was signed in this State.    It was payable at the office of the Corbin Banking Company in New York City, to J. K. O. Sherwood or order, and indorsed by him, without recourse, to the plaintiff.    The note bears eight per cent. interest.    To secure this note Mrs. Taylor executed in this State a warranty-deed of even date with the same, to certain lands in this State, the deed reciting that it was intended to conform to certain sections of the code of Georgia in reference to security-deeds.    It further appeared that Mrs. Taylor had made a written application for the loan, executing the application in Georgia and offering therein as security real estate situated in this State, expecting a lender to be found by her agent elsewhere; that afterwards the application was accepted in New York by a person whom it may be presumed was a resident of that State; and that she executed the note and the deed above referred to as security, the note and the deed, after the latter was recorded, being delivered in New York by her agent to whom it is clearly inferable from the evidence the money was there delivered.    An examination of the facts as contained in this record brings the case clearly within the rulings made by this court in its former decisions, and the question whether under such a state of facts the contracts are to be treated as Georgia contracts must be considered

·as no longer an open one in this State. *New Eng. Mortgage Company* v. *McLaughlin,* 87 *Ga.* 1; *Jackson* v. *American Mortgage Company,* 88 *Ga.* 756; *Stansell* v. *Georgia Loan & Trust Co.,* 96 *Ga.* 227; *Underwood* v. *American Mortgage Company,* 97 *Ga.* 239. The evidence disclosing nothing from which it·could ·be inferred that there was any purpose or attempt to violate or ·evade the usury laws of New York, the transaction will be up-held unless it is in violation of the usury laws of this State.

The evidence showed that Mrs. Taylor made application to Felder to procure a loan, agreeing in the application to pay ·certain commissions; that this application was forwarded to the Corbin Banking Company, a New York corporation engaged in the brokerage and banking business; that by an arrange-ment with Felder and the Corbin Banking Company the latter was to receive·a part of the commissions; that the amount for which the application was made was sent by the banking com-pany to Felder, after the commission which that company was to retain had been deducted therefrom; that the banking com-pany sent to Felder the note, deed, and bond for titles, which were the papers necessary to complete the transaction; and that in all these papers the lender appeared to be J. K. O. Sherwood. There does not seem to be any direct evidence that Sherwood delivered the money to the Corbin Banking Company, but this is necessarily to be inferred from the circumstances. It further ·appeared that Felder, with the knowledge of Mrs. Taylor, appro-priated the money to the payment of the Thomas execution and the commission due him and for insurance on the property; .that there was not·enough to pay in full all of these items; and that for the purpose of procuring the additional amount neces-sary, a note ·signed by Mrs. Taylor and indorsed by Felder was executed. There was no evidence that Sherwood received any part of the money retained by the Corbin Banking Com-pany as commissions, and nothing whatever appears in the record to negative the conclusion that he had not actually parted with the full amount for which the note was given. See *Hudson* v. *Equitable Mortgage Co.,* 100 *Ga.* 83. There is no direct evidence that the Corbin Banking Company was the agent of ·Sherwood; but even if this could be inferred, there was abso-

lutely no evidence tending to show that he knew that the Corbin
Company had retained any part of the money as commissions.
Under this state of facts there was no usury in the transaction.
Such is what we understand to be the repeated adjudications of
this court. *Boardman* v. *Taylor,* 66 *Ga.* 638; *Merck* v. *American Mortgage Company,* 79 *Ga.* 213; *Hughes* v. *Griswold,* 82.
*Ga.* 299; *Riley* v. *Olin,* Ibid. 312; *McLean* v. *Camak,* 97 *Ga.* 804.

3. There was no error in refusing to allow E. Taylor to testify that his wife was ignorant of the fact that a verdict and
judgment finding the property subject had been rendered
against her on her claim interposed in Lee superior court to
the levy of the Thomas mortgage execution. This verdict
and judgment was consented to in open court by attorneys who
appeared as representing Mrs. Taylor; and while the evidence
offered tends to establish that they acted in the matter without
conferring directly with their client, there is no pretense that
the attorneys who consented to the verdict and judgment were
not duly authorized by Mrs. Taylor to represent her in the trial
of the case; and this being true, it is immaterial whether she
knew of what had been done in the case or not. See Civil.
Code, § 4417; *Webster* v. *Dundee Mortgage Company,* 93 *Ga.* 279.
If her attorneys exceeded their authority or she has suffered
by their negligent conduct, she has a remedy against them;
but the verdict and judgment would nevertheless be valid.

There was no error in refusing to allow E. Taylor to testify
that at the time he gave Thomas the mortgage on the lands in
Lee county, he told Thomas that Mrs. Taylor's money had paid
for the lands, and that he (Taylor) simply held the paper title to
the same; and that Thomas remarked: "All right, he would risk
it anyhow, as he already had a mortgage on the house and lot in
Americus, which was good security for all the debt except the
interest." It was contended that this evidence was admissible,
because the plaintiff had taken a transfer of the Thomas mortgage execution, and that therefore notice to Thomas was notice
to the transferee. The plaintiff is not seeking to enforce the
Thomas mortgage execution, and for this reason the evidence
was irrelevant and properly excluded.

This case is controlled on all points by the former decisions of

this court, cited above. We have carefully read every line of this brief of evidence; and after as thorough an investigation of the facts as it is possible to give a case, we have reached the conclusion that if a verdict had been rendered in favor of the defendant on any of the pleas filed by her, there would have been absolutely no evidence to support such a finding. Her contentions are not directly supported by any proof, nor sustained by any legitimate inferences from any of the facts in evidence. Such being the case, we can not but hold that the circuit judge was correct in directing the jury to find as they did. Civil Code, § 5331. .

Judgment affirmed. *All the Justices concurring, except Simmons, C. J., who was disqualified.*